This is Mark Bradford representing the Appellant Officer Scott Thompson. We're here today to ask the court to reverse the District Court's denial of Officer Thompson's motion for summary judgment based on the doctrines of qualified and official immunity. Is Mr. Thompson here by any chance this morning? He is not, Your Honor. Not that I saw him anyway. Okay, I'm just curious. He has retired by now, hasn't he? I suppose he has. I don't know that that's true. Because as I recall, at the time of his deposition, he was 10 months short of retirement after 25 years of police work. I think that's right. And he's a 25-year officer with the Edina Police Department. Very well. I want to address just very quickly a predicate issue that was raised in the Appellee's brief with respect to jurisdiction. Because I think there's some confusion about what jurisdiction this court has. And I want to be very clear that we are not asking the court to resolve disputed fact questions. We are asking the court to apply undisputed facts, which I'll get to in a second, to the doctrines of qualified and official immunity. And as this court pointed out in Smith v. Kansas City Police Department, and as the Supreme Court pointed out in Johnson v. Jones, the court has authority on an interlocutory basis to review the record to determine whether the facts support a claim for qualified immunity. When it comes to qualified immunity, the standard obviously is familiar. The doctrine shields government actors like Officer Thompson from suit unless their conduct violates clearly established constitutional rights that a reasonable person would have known. And as the Supreme Court has artfully put it, it protects all but the most plainly incompetent officers or those who knowingly violate the law. Now, the principal conduct at issue in this case is Officer Thompson's discretionary decision, under Minnesota statute, to transport Ms. Meehan, who was intoxicated in public, to a treatment facility. You concede that's an arrest, right? I concede that's an arrest. In our brief, essentially, we have. Proceed. What cannot be lost in the analysis is that there is a Minnesota statute, and it's 235B.05, which gives Officer Thompson the discretion to do exactly what he did. If he has probable cause to arrest? If he has probable cause or arguable probable cause. Did the district court make a finding on probable cause? The district court did not. What the district court did, the statute says you can transport a person intoxicated in public to a facility. The district court did not determine whether Officer Thompson had reasonable, excuse me, probable cause or arguable probable cause to determine whether Ms. Meehan was intoxicated in public. What the district court did was to go to an element that's not in the statute, which is to say that Officer Thompson did not have arguable probable cause to believe she was a danger to herself or others. If you apply the plain language of the statute, let me just take you through some of the undisputed facts that establish as a matter of law that Officer Thompson at least, at the very least, had arguable reasonable cause to believe that Ms. Meehan was intoxicated. Don't you think that's a finding effect? The finding effect of just a probable cause? No. If you take the undisputed facts in the record and apply them in the context of this case, it becomes a legal determination because the whole purpose of qualified immunity is to take undisputed facts so that officers don't have to stay in trial when there's no question that they had arguable probable cause for their conduct. And in this case, there's an abundance of facts. And I'll grant that the issue of whether Ms. Meehan was slurring her words or was uncooperative, those are disputed facts. We'll take those out of the equation. But let's look at what the objective facts were of which Officer Thompson was aware at the time he made his decision to transport Ms. Meehan to detox. First of all, when he arrived at the scene, another officer who had been there and had encountered Ms. Meehan advised Officer Thompson that Ms. Meehan had been belligerent and that she appeared to be worse off than the driver in the vehicle she was with, who ultimately blew up. Who told Officer Thompson that? Officer Cusky, who had been outside the car, had seen and interacted with both Ms. Meehan and her passenger. Did Ms. Meehan display that same belligerence towards Officer Thompson? Not that I know of, Your Honor. What she did do, she was on the cell phone essentially when Mr. Thompson, Officer Thompson, was trying to interact with her. But we have a report from an officer to Thompson, so this is within his knowledge at the time he gets there, that Ms. Meehan had been belligerent. But more than that, the two persons who came from the same location where Ms. Meehan came from, one of them made it 10 blocks before she got in a car accident. Another one, who Ms. Meehan saw fit to get in the car with, blew a .18. And I'll acknowledge that mere associations with intoxicated individuals standing by themselves, that's not enough indicial probable cause. I'm glad you meant that, because I wrote down this, is this guilt by association? Right, and what the Supreme Court has said is guilt by association standing by itself isn't enough. But it's one of the factors that can lead a reasonable officer to determine he has reasonable probable cause. Well, we can do a syllogism, everyone who is intoxicated has been drinking, but not everyone who has been drinking is intoxicated. That's true, not everyone who's been drinking is intoxicated. But there's objective indicia of intoxication in this record. She had unquestionably incapacitated with respect to her judgment call. She got in a car with an obviously intoxicated person. She told Officer Thompson she had been drinking. Now, to determine if somebody who has been drinking is intoxicated, to answer your question, Your Honor, what police officers do is they administer tests to make that determination. Well, in this case, at least according to Ms. Meehan, Officer Thompson offered her a field sobriety test, which she declined. But the facts of the matter are she got in a car with an intoxicated person. Then when she got to the scene, she made the decision to get out of the car and to try and interrupt an ongoing examination of the person who got in an accident ten blocks from her house. It's undisputed that Officer Thompson, this is not refuted in the record, that Officer Thompson could smell alcohol in Ms. Meehan's breath. Ms. Meehan obviously made the poor decision to get out of her car. And, of course, Ms. Meehan was intoxicated when she got to the facility. She blew a .082. As Judge Benton, you pointed out, the judge did not make a determination that this officer lacked arguable probable cause. If you take into consideration all of the facts in this case, the undisputed facts, it's clear that he at least had arguable probable cause to take Ms. Meehan to detox. Did he ever at any point arrest her for DWI? Well, there is no public intoxication in Minnesota. That's right. That's right. So his only legal authority was to what? Caretaking? The caretaker function, which is what is provided by Minnesota statute. And what I'll point out is the argument that's essentially made in the response brief as well, and that was made by Judge Frank, was there's basically another requirement of the statute that's not expressly provided for in the statute, and that's that the person be a risk to themselves or others. And what I would point out to the court is the precise argument was made, I think this is the only other time this statute has been addressed by the federal court, and it was by one of this court's colleagues in the Carman case where Judge, I believe it was Judge Murphy, said Minnesota statute 235B.05 is ambiguous as to whether a finding of dangerousness is required. Thus Fairview's interpretation that Minnesota statute 253B.05 requires only that a person be intoxicated in public to be validly admitted to a treatment facility under the statute does not, as a matter of law, violate clearly established statutory or constitutional rights of which a reasonable person would have known. Excuse me, that was Diana Murphy was the judge in that case. So the statute is very clear on its face that all the officer has to have is arguable, reasonable cause to believe that a person is intoxicated in public. The statute does not require absolution. It does not require that the person below a .15, but the officer who's in the field at the time and is making his determinations based on objective criteria, what another officer told me, what I observed with respect to her conduct. You're getting low on time. Let me ask you about the search issue. Was it objectively reasonable for Officer Thompson to frisker? Yes. Okay, tell me why. Because Minnesota is not a bright line state. It's a multi-factor state. My goodness gracious. Well, exactly right. And recall, in the context of qualified immunity, the right has to be clearly established. And in Minnesota, you can't point to a case that says where you take somebody into custody for the purpose of transporting them to a locked facility, as it was in this case, that the officer has no right to conduct a pat-down search before putting that person in the car and taking them to a facility. I'm interested. Was there a female officer on location there? I'm sorry, Your Honor? Was there a female officer also there? No, there were three male officers present. But I don't think the premise of the claim is not that the pat-down search was done by a male officer. I believe that the premise of the claim is that the pat-down shouldn't have been done at all. And obviously that's a disputed fact, whether the pat-down search was done. But for purposes of today, we can say it was. I was wondering what your analysis was of last week's opinion in that Tolan case from Texas. Tolan v. Cotton. Texas Supreme Court? In the U.S. Supreme Court, right? Quite frankly, Your Honor, I didn't see that that had come down. What's the T-O-L-A-N? Yeah, last week on the 5th of May. So anyway, it's an interesting case. The Supreme Court sort of slapped the Fifth Circuit's hands for not giving full credence to the claimant's statements, evidence. But we'll talk about that later, maybe when we write our opinion. The issue, though, is it's not a Terry situation where this is a momentary stop where you have to have some articulable suspicion that the person is armed and dangerous. We're talking about a statute that gives the officer authority to actually transport somebody in his vehicle to a locked facility. Well, what about the physical? Is she complaining because he touched her physically? Like a TSA officer at the airport? The way I read the response brief is they're complaining that this pat-down search constituted a violation of the Fourth Amendment because it should never have occurred. The defect in that argument is that it presumes that officers who are going to be transporting somebody, an intoxicated individual, in their car to a locked facility can't perform a limited pat-down search to assure that the intoxicated person does not have weapons or does not otherwise pose a danger. There's no law for that. There's no case law in the context of the community caretaker function which would support that analysis. Well, you know about the driver's license case from the Minnesota Supreme Court. Why is this like the driver's license case? Well, the Minnesota Supreme Court said failure to produce a driver's license does not justify a frisk. I think I said that right. Well, failure to produce a driver's license does not require nor would it substantiate a custodial arrest. This is essentially a search incident to an arrest. As we pointed out in the beginning, this is the functional equivalent of an arrest when you take somebody and you transport them to another facility. The law is very clear that where you have a pat-down incident to an arrest, incident to the officer actually placing the person in the car, the officer has the right to conduct a pat-down search. And to get back to your point, Judge Wolman, I don't think there's a claim in this case, and if there is, I think it would be precluded by Chambers, that the frisk was excessively done such that injuries were sustained. Well, physical injury, no, but the emotional shock. She talked about this officer putting his black boot between her legs. We still have de minimis injury in this case? Well, there's a psychological injury. Do any of our cases say there has to be some evidence of physical injury? What you have to have is more than de minimis injury. In fact, in this case, it's very clear. Well, that's for a jury to decide whether it's de minimis or not, if it affected her psychologically. Not unless there's objective evidence in the record that it did. And she confirmed in her deposition that she was not psychologically impacted to the point where she was. Well, there's no question for the jury there, I take it. I'll reserve the rest of my time for rebuttal, Your Honor. I appreciate it. I only have a minute and a half left. We might think about this as I was reading the briefs. Is the key to this case, I'll have to have wrote this down somewhere, or not a key but an interesting thing at this point where he finally said, I've lost patience with you. Up until that point, he had no problem with this woman. No, it's not, and I'll tell you why. We'll give you an extra minute. Sure. When you get to all these issues about did he give her enough time to find a sober ride, he could have dropped her off somewhere, he could have taken her to Lund's, what you're getting into there is how the officer exercised his discretionary authority. Once you determine that the statute confers upon the officer to do what he did, to exercise discretion, whether the officer should have done it, should have given her 15 minutes instead of 10, those are all issues that go to how the officer exercised his authority. Which gets me to one of the questions I was going to ask your opponent. Are we to act as sort of an ombudsman or a police review board? And your answer would be no. That's essentially what they're asking you to do. Officer Thompson was not obligated to extend an olive branch at all. Once he made the determination that there was reasonable probable cause to believe she was intoxicated, he could transport her right then. Excuse me for interrupting. There was no split-second decisions to make. How long were they in contact with each other? That video takes a long time to watch. I believe 16 minutes from the moment Officer Thompson gets there to the time he leaves the scene. It's 11 minutes from when he said, you've got to get a sober ride or I'm taking you to detox to when you actually left the scene. And there was terrible confusion about her daughters, but that's neither here nor there. What was my final question, if I can think of one? Does the video itself support the officer's conclusion that this woman was visibly intoxicated? I believe it does. Well, that's what you would say, but does it? She was sitting there for a long time in the car, wasn't it? Well, first, the fact that she was there with a visibly intoxicated woman. That goes back to the guilt by association. Well, she made the decision to get out. She made the wrong decision to go with a drunk driver. And why did she decide to go with a drunk driver? Because she believed she was too intoxicated to drive. So she self-confirmed her own intoxication. Which was, of course, confirmed later at the detox facility as well. Very well. Thank you. We'll give you some time for rebuttal. Okay. We'll hear from Mr. Applebaum. Good morning, sir. You may proceed. Good morning, Your Honor. I'm Paul Applebaum, and I'm here on behalf of Kathleen Meehan, who is in the audience today. I was trying to keep up with opposing counsel's recitation of the facts, but I want to start off by refuting some of the claims that he made in front of this court. The first claim that he made that is not true is that Ms. Meehan had no psychological injuries from the frisk. And the officer's handling of her at the side of the squad car. In her deposition, and it's noted in our appellate brief, I recall vividly his big black boot coming in between my legs and shoving them apart before he frisked me. It was violating, and it was violent. It was horrid. So there is evidence in the record of psychological injury, Your Honor. I wanted to correct that. The other misstatement that counsel made was that the officer, pursuant to his claimed lawful arrest and detention of Ms. Meehan, frisked her after that. He frisked her before he even decided to take her to detox. So it wasn't like he had her in a custodial situation that he was going to transport her. He frisked her before she even got into the squad car. And then he made the decision, and that's the statement referenced by the court, I've lost patience with you. That's when he made the decision to take her to detox. It wasn't decision to transport, frisk in the car. So I wanted to correct that misstatement as well. The other misstatement that was made is that Ms. Meehan declined to take a PBT. What she did do was say, what for? And then the officer spun her around and put her up against the squad car. That's not saying I'm not going to take a PBT. She's asking what the purpose of it is. Based on how the what for said, do we have a video of that? There is video of the incident. Outside of the frame, sometimes they're moving in and out of the frame. Does the what for enter out of the frame? It's out of the frame, but that's her testimony and her definition. Okay. And it's not unlawful to decline to take a preliminary breath test, by the way, in Minnesota. You lose your license if you're a driver, though, I bet. True. The statute that the defendant is holding up as a defense in this case is entitled emergency commitment. That's the actual name of the subdivision. Now, remembering back in the Stone Age is my law school statutory construction class. I know that the title of a statute doesn't always control the interpretation, but it certainly is persuasive as to what the statutes. Do they enact titles in Minnesota or not? In Missouri, they enact the dang title of the statute, and therefore we use it. I think they are enacted. Well, then proceed. You have better argument than you think. Go ahead. And so the title itself tells you how this statute is to be interpreted. And this emergency commitment statute was enacted after the public drunkenness statute in Minnesota was repealed, and Judge Frank noted that in his memo or in his order. Public drunkenness statute is repealed. We don't arrest people for being drunk in public in Minnesota. They're just not. Come downtown St. Paul on St. Patrick's Day, and you'll get a sampling of what goes on. What we do do, though, is we arrest people under the community caretaker function, and that's to protect people. It's not a criminal statute, but that's to protect people who are intoxicated. And I would submit to you that the definition of intoxicated is far beyond what opposing counsel is holding out. But the statute provides that people who are intoxicated and can't provide for themselves are vulnerable out on the street. I was wondering about that. In other words, it's illegal to drive with .08 or higher, but if you're walking on the street .08 higher, nobody can do anything about it It's not what it says, is it, counsel? In other words, she could be violating the law if she had been driving the car, but she's not violating anything by having .08 and sitting in somebody else's car. Counsel, it says intoxicated in public. Intoxicated. I think you're not giving a fair answer to the question. I may not understand my own question. Could you rephrase it, Your Honor? No. My question is, where do you get any basis to think this has to be falling down drunk? It says intoxicated in public. Where I'm getting it from is the community caretaker function in all of the Fourth Amendment cases from the Supreme Court of the United States, in which they talk about helplessly drunk. People who are standing in the middle of the street drunk and not putting themselves in harm's way as far as oncoming traffic. An individual who's passed out drunk in his car and could possibly drive away and kill himself. That's the component. Well, that's the far extreme. In January in St. Louis, we heard a case from Arkansas where the police officer didn't think the fellow was too intoxicated, dropped him off sort of where the fellow wanted to be dropped off, and in the morning they find the fellow dead of hypothermia. Now, those aren't the facts of this case, but they could be. I mean, she wanted to walk to this convenience store about, what, two, three blocks away? Right. And if there had not been that confusion with the telephone call with her daughter, someone would have come in time. But that's all. I don't know how relevant any of that is. I mean, the officer didn't know all about this, did he? Right. But I think what we're missing here is that the record below and Ms. Meehan's version of the events and the intake form at the detox center and the video all show that she is not impaired. Counsel, isn't the real issue here, we're kind of talking around it, and I've led you there to talk around it, but isn't the real issue here whether Officer Thompson had probable cause to believe she was intoxicated? Yes. And the district court made no finding on that. Shouldn't it be sent back for the district court to make a finding on whether he had probable cause or arguable probable cause she was intoxicated? To be fair to Judge Frank, that was a very tiny fraction of the summary judgment memo that was submitted to Judge Frank. So if any fault lies, it lies with the author of the motion for summary judgment memo. But Judge Frank did address probable cause on page 9 and 10 of his order. Questions of fact exist as to whether a reasonable officer in defendant's position would have believed that transporting plaintiff to detox constituted a violation of her constitutional right to be free from unreasonable detention, a right which was clearly established at the time of the incident. So he does address that, Your Honor. He does. And so I think that that's sort of a... Yeah, but if you think intoxicated is the linchpin of the statute, and it is the linchpin of the statute, shouldn't there be a finding about whether he had probable cause to believe she was intoxicated? Well, I think he does make that maybe in sort of a gestalt, you know, way. He does do that. He understands what the standard is, and he understands the cases that have been submitted to him. And I think implied in his order is they don't even get off first base because they haven't established with undisputed facts that there was probable cause to believe that she was intoxicated. Well, if there was probable cause to believe she was intoxicated, where does that take us? Let's assume he makes that finding. It depends if you buy into the argument that there needs to be the added component of dangerousness to self or others. Well, I think you have a tough time reading the statute in such a way as to say that that was clearly established. Well, let me... For qualified immunity purposes. You read the first... As I read this statute, it says, it may take a person who is believed to be chemically dependent or intoxicated into custody and transferred to a treatment facility. And then the second says, if they don't believe there is danger to themselves or others, they may take them home. So I read that the danger to themselves or others to give the officer the option to take her home, which maybe he could have done in this case, but I don't see that as a mandatory requirement. I'll give you an example of how no reasonable officer would believe that just intoxication alone could land you in detox. Let's say the officer pulls a DWI suspect over, provides a PBT test to that person, and the PBT test is .03, something well below the definition for drunk driving in Minnesota. There is no officer on the face of this earth that would then turn around and go, well, you're not guilty of DWI and you're really not even close to the line, but I'm going to take you to detox because you do have some modicum of alcohol in your system. I've been practicing for 20-plus years. I've represented thousands of people in DWIs and also in detox centers. I've never had somebody call me up and say, get me out of here. I didn't get a DWI last night, but I was a .03 and the officer took me to detox. So I think in practice it's clearly established. In common sense terms, it's clearly established. They are asking you to write a bright-line rule that would say that anybody who's intoxicated in public can go to detox. I'll give you an example. Last night at the Wild Game Excel Center, Section 122, half the people in there probably had three, four, five beers in the course of the game. What they're asking you to do is bless a mass arrest of Section 122 and take them to detox. That's the bright-line rule that you're being asked to endorse. And that simply is ludicrous. I mean, that sort of carte blanche is not going to be consistent with the Fourth Amendment. Well, what should Officer Thompson have done that he didn't? He should have let her go. He should have said, ma'am, what do you want to do? I have no authority, and I understand the predicament that I think you're driving at, Your Honor. You have a cop in the field. He has a woman that can't drive. He doesn't believe she's capable of driving, and he doesn't want to let her drive. So what can he do? She's not intoxicated. Well, let's assume she is, but mildly. But she's not falling down drunk, but she is intoxicated. Say she's at .10. I don't think he has the authority under the Constitution to just take her to detox. You can't deprive people of their liberty. But you haven't asked the question. Let's assume he reasonably believes she was at least mildly intoxicated. You know, Judge Wolman has posited the cases, and we've had them. You let somebody go along the side of the road. They get hit. They fall down. Taking them to a convenience store is not a very good alternative. So there's really, I mean, he's really got three choices, right, realistically. Wait for a driver, take her home, or take her to some facility. Right. And two of those would comport with the Constitution. Take her home. By the way, what was skimmed over in the briefs of appellants is the officer in the squad car was just a few minutes away from the Meehan home. He went way farther to take her to detox than he could have to take her home. I was going to ask about that. Well, again, that gets us back. Did he have any constitutional duty? Did she request to be taken home? No. She did two things. One, she said, I'll walk to a Lund store, which is close by. The other is call her husband, who was on his way. The officer only waited four minutes after the phone call ended, arranging a ride, before he made that statement, I've lost patience with you, we're leaving. And then he drove off. Just to get back to Your Honor's question, I think he had some options. Number one, drive home, take her home. What about taking her to the police department? Let her sober up there if there's a question about her intoxication. I don't know constitutionally that's any better than the detox center. Well, I understand your concern. An arrest is an arrest. Well, but here's the difference, though. Checking into a detox center is a 72-hour hold. You're there for three days, versus going to a police station. Well, she got out earlier than that, right? Beg your pardon? She got out earlier than that. Only because she had the resources. A lawyer, yeah. Go ahead. Proceed. That wasn't something that Thompson knew at the time he checked her in. Proceed. And I'm running out of time, but I want to talk about, if the court is okay and I've answered your question, but I wanted to talk about the undisputed facts of intoxication in this case. I talked about the video, which shows her getting out of the Anderson car. She gets out with absolutely no impairment whatsoever, and she walks onto the curb to engage the officers who are standing on the curb. When you're listening to her on the audio tape, it is a bit muffled. There is absolutely no slurring of her words. There's no inability on her part to not understand what was going on. She's absolutely engaging with these officers about the situation. She takes her friend's phone. She has the motor skills to call home. She remembers her home phone number. She talks on the phone. She's able to do all of the normal things that people do to take care of and to handle the situation that she's presented with. So when you're talking about the record and when you're talking about undisputed facts, we could have affirmatively moved for summary judgment, I believe, in this case, and probably gotten it. When she gets to detox with Officer Thompson, he marks down all of these things, and it's at page 80 in the appendix. He checks off all of these boxes. But what's interesting is what he doesn't check off. He doesn't indicate that she can't care for herself. It's at page 79, excuse me, Your Honors. He doesn't indicate that she's incoherent. He doesn't indicate that she's unable to stand up. She's not staggering. She's not swaying. He doesn't indicate that she's an imminent danger to others. He doesn't indicate that she's an imminent danger to herself. None of these things. What he does say, though, are two falsehoods. At the beginning of the form, it asks him, what are the reasons why she should be admitted? He says, refuse PBT. She didn't refuse the PBT. She didn't refuse. She asked what it's for. Can we hear the what for words? I asked you previously about the frame. Can we hear her say the what for words? No, but what you can hear is you can read in her deposition that she said, I just asked why. And you have to take that as being true for summary judgment purposes. And then the other one is that she didn't cooperate with her own care. That is not true. She got on the telephone, tried to call her family, was in the process of doing that, and he got sick of waiting for her and drove off. And unless the Court has any questions, I'm out of time. Very well. So you may proceed. Virtually everything you just heard was an attack on the statute. We're not asking the Court to draw a bright line rule. The Minnesota legislature has already done that. So the question is whether Officer Thompson can comply with a facially valid statute that has been in effect for three decades and somehow know that that statute violates Ms. Meehan's constitutional rights. That was the exact issue that Judge Murphy addressed in her district court decision, and she said statutes are presumed to be constitutional. So an officer transporting a person who he reasonably believes to be intoxicated to detox can't know that he's violating that person's Fourth Amendment rights simply by transporting her because that's all the statute requires. And to answer your question, Judge Benton, about should we remand to Judge Frank, the issue on appeal is de novo. The standard of review is de novo. I think this Court can make a determination based on the undisputed facts that he at least had arguable probable cause to detain her and transport her to detox. I would say at the very least we get a remand, but I think the Court can consider it as a matter of law because it's not a finding on which Judge Frank would be entitled to any deference in any event. Unless the Court has any other questions, which Judge Goldman appears to do. I think in one of your briefs you talked about this Winters v. Adams holding that unless the officer was blatantly wrong, I don't find the word blatantly there, but let it pass. Let it pass. You might do a Westlaw search of that someday. Well, I think what Winters basically says is that They didn't use the word blatantly, I'll tell you that much. It reiterates what the U.S. Supreme Court's holding is, is that qualified immunity protects all officers unless they are plainly incompetent or clearly violate the law or intentionally violate the law. Well, you'll find that Toland case very interesting when you get back and read it in your office. Whether it will have any bearing on our cases remains to be seen. I'll definitely do that. Thank you, Your Honor. We thank both sides for their vigorous advocacy. It's an interesting case. It is under submission, and we will decide it in due course. We'll be in recess.